## HARMON *v.* HARMON.

1. TRUSTS—PERSONALTY—STATUTE OF FRAUDS—PAROL EVIDENCE.
    A trust of personalty is not within the statute of frauds and its existence and terms may be shown by parol (3 Comp. Laws 1929, § 13417).

2. SAME—PAROL TRUST OF PERSONALTY—INFERENCES—EVIDENCE.
    While the existence of a parol trust of personalty may be inferred from the facts and circumstances of the particular case, the evidence must be very clear and satisfactory and must find support in the surrounding circumstances and in the subsequent conduct of the parties.

As to validity of oral trusts of personalty and the evidence required to prove them, see 1 Restatement, Trusts, § 39, and comment a.
That no trust is created unless an intention to impose enforceable duties is manifested, see 1 Restatement, Trusts, § 25.

3. SAME—EVIDENCE—INTENT—THIRD PARTY BENEFICIARY CONTRACT.
    In suit by widow and guardian of minor son of widow and
        decedent against decedent's son by a former marriage to
        impress a trust upon assets of a county abstract office, where
        unconditional bill of sale to defendant and subsequently
        executed but unprobated will failed to mention a trust or
        third party beneficiary contract and memorandum and letter
        by decedent to defendant and widow did not set up a valid
        trust nor evidence an intent to create one, and insurance,
        survivorship in jointly held property, and portion of intestate
        estate left plaintiffs with a substantial estate, no legally bind-
        ing trust is found to have been intended or created (Act No.
        296, Pub. Acts 1937).

4. SAME—INTENT.
    A trust is created only if the settlor properly manifests an
        intention to create a trust.

Appeal from Cass; Warner (Glenn E.), J. Submitted October 8, 1942. (Docket No. 38, Calendar No. 42,119.) Decided November 25, 1942.

Bill by Dorothy Harmon and Beniah A. Tharp, guardian of William L. Harmon, a minor, against Charles M. Harmon, Jr., to impress a trust upon assets in defendant's hands, to enjoin transfer thereof; and for an accounting; or, in the alternative, for specific performance of a contract and payment of sums found due thereunder. Bill dismissed. Plaintiffs appeal. Affirmed.

*Donahue & Grathwohl,* for plaintiffs.

*Clarence M. Lyle,* for defendant.

NORTH, J. The purpose of plaintiffs in this suit is to impress the assets of the Cass County Abstract Office, Cassopolis, Michigan, with a trust for their support; or in the alternative to have enforced specifically the terms of an alleged contract between defendant and the late Dr. Charles M. Harmon. The trial judge refused to allow either of these claims. Plaintiffs are Dorothy Harmon, the widow

of Dr. Harmon, and Beniah A. Tharp, guardian of William L. Harmon, who is the minor son of Dr. Harmon and Dorothy Harmon. Defendant is the son of Dr. Harmon by a former marriage.

Dr. Harmon practiced medicine in Cassopolis during his lifetime. He also owned the Cass County Abstract Office which formerly had been operated by his father. On September 9, 1938, Dr. Harmon transferred by bill of sale with no conditions attached the assets of the abstract office to defendant. Dr. Harmon's signature and the delivery of this instrument were witnessed by the attorney who drew it. Defendant kept it for a few days, and then, before returning to college, inclosed it in a sealed envelope on which he wrote his name and asked his father's permission to put it in his father's safety deposit box, where it remained until after the death of Dr. Harmon.

Five months after making the above bill of sale. and on February 8, 1939, Dr. Harmon went to his attorney who had drawn up the bill of sale and stated ''I want to be sure that Bud (the defendant) has those abstracts—I don't want any doubt about that bill of sale.'' The attorney thereupon drew up a will at Dr. Harmon's request, whereby the doctor bequeathed the assets of the abstract office to defendant. Dr. Harmon died March 26, 1940. The will has never been probated; the attorney testified the probate judge told him that the property in the will (the abstract business) had already been disposed of and the will conveyed nothing.

Plaintiffs base their contention that the transfer of the assets of the abstract office to defendant was subject to a trust for their benefit (plaintiff Tharp representing the minor son William) on four grounds: A memorandum from the doctor to defendant found in the doctor's safety deposit box after his death; 2. A letter from the doctor to plaintiff

Dorothy Harmon found at the same time in the same box; 3. Defendant's testimony and part performance by him; 4. Testimony of plaintiff Dorothy Harmon and supporting witnesses.

The memorandum bears the same date as the bill of sale, September 9, 1938. The material portions are:

"Memo. to Charles M. Harmon, Jr.

"As we have discussed at various times, I have sold you the abstract office at a nominal figure with the thought in mind that by so doing, I am taking the surest means of protecting the best interests of my heirs. This presupposes your trustworthiness, in which I have full confidence.

"Legally the business is yours to do with as you wish. Morally you are receiving it as a trusteeship, and as such I hope you will receive it.

"My wishes regarding the business are as follows:"

There then followed the "wishes" that defendant withdraw sufficient amounts from the earnings of the abstract business to enable him to conclude his schooling at college and at Johns Hopkins; that "Dorothy receive a sufficient amount to keep her and Bill in comfort, which I would estimate to be from $2,500 to $3,000;" that any balance be placed in a savings account for emergency; that William receive an allowance sufficient to complete his education; that after defendant became established in practice, the division of profits be left to his own judgment.

The letter to decedent's wife did not bear a date, though its context indicates it was written after the bill of sale and memorandum:

"From the time of my mother's death and the trouble and expense caused by the abstract office

being a part of her estate, I have figured how that could be prevented following my death. Two or more years ago I had decided upon the present plan, waiting only for Buddy to come of age. I am afraid, however, to wait longer, and inasmuch as there is only another year to go, it can make little difference.

"I feel that the present setup is the only way that I can be sure that you will all be provided for. I have given Buddy definite instructions (written) as to the handling of the financial matters and am absolutely sure that he will carry them out to the letter. I wanted to be sure that both he and Bill would have sufficient funds to complete their education, and to prevent the expense and possibility of graft in a long guardianship, in case of both of our deaths.   *   *   *

"Briefly I have instructed Bud to take only such money from the office as is necessary for his school expenses, being about the same amount as he has had up to now while at State, and what extra is necessary at Hopkins. The greater part of the balance is to go to you and Bill, with the remainder to be put in a savings account for emergency use. Between the time that, he goes into practice and Bill enters college, he should be able to build up the savings considerably.   *   *   *

"I hope that you can believe that I have only done what I thought would be the best for you all, and that after several years of consideration."

The testimony of defendant upon which plaintiffs rely to support their contention that a trust was set up is as follows:

"*Q.* Shortly following your father's death did you have a conversation with Dorothy Harmon relative to the income that she was to receive; at least at that time, from the Cass County Abstract Office?

"*A.* We had some conversation about her expenses and I made arrangements to cover her expenses for a time.

"*Q.* I wish you would please read the question. Last question read?

"*A.* Yes, sir.

"*Q.* What was that conversation?

"*A.* Well, we had a conversation, before I went back to school after my father's death, and we sat down and I—with a pencil and paper—and I went over with her her expenses—you understand that I was living at home at that time—even though I was going to school that was considered my home by myself and I thought it no more than fair that I should pay expenses to cover the household, and we arrived at a conclusion how much those expenses were, and I made arrangements that she could draw that amount of money to cover her expenses.

"*Q.* And that was how much?

"*A.* Why, we had—I arranged with her that she would have so much pocket money to cover certain expenses—expenses such as payment on the house, and a few incidentals like that, were taken care of individually—and I—it varied from time to time.

"*Q.* Well, in this conversation that you had with Dorothy Harmon, prior to going back to college, was the income from the Cass County Abstract Office discussed—the amount of it?

"*A.* It was.

"*Q.* And was the income from the Abstract Office—the amount of it—taken into consideration in determining how much you were going to give Dorothy Harmon?

"*A.* Why, of course that would have to come in the conversation. I couldn't give her more than was coming in."

Plaintiff Dorothy Harmon testified that the day the doctor's safety deposit box was opened, defendant told her "he had agreed with his dad that he was to give me so much a year for my support, and for Bill's support," $2,500 a year. Edward J. Relighan, a witness for plaintiffs, testified Dr. Harmon had told him that he had transferred his "abstract

office'' to defendant and had made arrangements with defendant to take care of plaintiffs. This latter testimony was admitted subject to defendant's objections that anything Dr. Harmon might have said after delivery of the bill of sale would be incompetent as being self-serving and also as being an attempt to contradict a written agreement by oral statements. Philip C. Landsman, a witness for plaintiffs, testified that defendant had told him subsequent to Dr. Harmon's death that he had acquired the "abstract office" and understood he was to take care of plaintiff Dorothy Harmon.

A trust of personalty is not within the statute of frauds* and its existence and terms may be shown by parol. *Boyer* v. *Backus,* 282 Mich. 593, 617; *Economy* v. *Roberts,* 274 Mich. 484. Its existence may be inferred from the facts and circumstances of the particular case. *Boyer* v. *Backus, supra; Faulds* v. *Dillon,* 231 Mich. 509. But the evidence must be very clear and satisfactory and find some support in the surrounding circumstances and in the subsequent conduct of the parties. *In re Lane's Estate,* 281 Mich. 70.

The bill of sale from the doctor to the defendant is an outright transfer to the latter with no conditions attached. The will which was made some five months after the bill of sale further indicates that the doctor apparently wished defendant to have the abstract business absolutely. Nothing was said about a trust or contract in either of these instruments.

It is our opinion that the memorandum left behind by the doctor neither set up a valid trust nor was it intended to create one. As the doctor wrote plaintiff Dorothy Harmon in the letter and as he

---

* See 3 Comp. Laws 1929, § 13417 (Stat. Ann. § 26.922).—REPORTER.

stated to his lawyer at the time the will was made, the doctor wanted to be certain that the defendant would have the "abstract office" outright. Dr. Harmon sought to prevent the assets of the abstract business being tied up as they were when his mother died. Further, the memorandum states: "This presupposes your trustworthiness, in which I have full confidence. *Legally the business is yours to do with as you wish. Morally you are receiving it as a trusteeship, and as such I hope you will receive it.* My wishes regarding the business are as follows." This shows the doctor intended to convey and did convey absolute title to defendant, but did desire him to know what the doctor's wishes were in regard to the use of the profits from the abstract business. This was morally binding only. In *Crisp* v. *Anderson,* 204 Mich. 35, a testator gave his daughter-in-law five dollars, saying that was all he "wished" her to have and he gave his son the rest of his estate, saying: "I want my son" to make disposition of the property so as to keep it "in the line of the Stafford blood and if any be poor or crippled I *would like* my said son Howard to favor those first out of said property." Calling these provisions precatory, it was held:

"The testator conveyed to his son an absolute estate in fee with full power of disposition but desired his son to know what his wishes were with reference to the ultimate destination of the property so devised. No language is found in either of the sections in question placing any legal limitation upon the estate thereby conveyed to the son, nor can it be said (regard being had for the language used), that the testator desired to impose any such limitation. That the son failed to heed the admonition of his father and to give effect to his father's clearly expressed desire is unquestioned, but that is a con-

tingency against which the testator could have, but did not, provide. It affords no argument for a strained or unusual construction of the language used."

See, also, *In re Davis' Estate,* 205 Mich. 129.

The letter to Dorothy Harmon merely restated the doctor's hopes that defendant would carry out what he had outlined in the memorandum. It says only that he had instructed defendant as to handling of the financial matters—that the doctor hoped thus to avoid expense and possibility of graft in case of a long guardianship. This is not the equivalent of setting up a trust since the language of the memorandum makes clear that there is a moral obligation only. The doctor left to his wife and minor son insurance totalling $9,000, and the wife became the sole owner of real property and a mortgage held jointly by him and her valued at over $4,000. Besides this he left an intestate estate valued at about $7,600. The wife and younger son in this way shared in the property which the doctor had accumulated.

Whatever defendant understood was his obligation to plaintiffs is important only in helping to determine what Dr. Harmon's intention was. "A trust is created only if the settlor properly manifests an intention to create a trust." American Law Institute, 1 Restatement, Trusts, § 23. Defendant, moreover, testified the doctor never discussed the transfer of the abstract business as being anything but an outright sale; and that defendant did not see or know of the memorandum until four days after his father's death.

On this record we find no legally binding trust was intended or created. Nor is there any evidence in the record of a contract being intended or entered into for the benefit of plaintiffs by the doctor and

defendant.* Defendant is under a moral duty only to provide for plaintiffs. Whatever he gave Dorothy Harmon or will give depends alone on his willingness to perform a moral obligation in compliance with his father's desire. The decree of the trial court must be affirmed. Costs of this court to defendant.

CHANDLER, C. J., and BOYLES, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.