*In re* HERBERT'S ESTATE.

1. GIFTS—INTER VIVOS—DELIVERY.

To constitute a gift *inter vivos,* there must be a delivery of the thing given, either actual or constructive, such a delivery from the donor to the donee as will place the property within the dominion and control of the latter with the intent to transfer title to him; otherwise no action will lie to enforce the donor's intent as there is no consideration involved.

Delivery of gift not necessary where donee in possession, see 2 Restatement, Contracts, § 414.

Unconditional delivery, see 1 Restatement, Contracts, § 102.

2. SAME—DELIVERY—PRESUMPTION ARISING FROM DONEE'S POSSESSION.

In the absence of testimony to prove there was no delivery of a gift, the law will presume a delivery from the possession of the instrument by the grantee or donee.

3. EVIDENCE—DELIVERY—PRESUMPTIONS—INTENT.

Any act presumptively a delivery will not be a delivery if the intent to make it such is wanting.

4. SAME—PRESUMPTIONS—BURDEN OF PROOF.

A presumption of fact is but a rule of procedure used to supply the want of facts and its only effect is to cast the burden on the opposite party of going forward with the proof.

5. SAME—PRESUMPTIONS NEVER OBTAIN AGAINST POSITIVE PROOF.

Presumptions of fact never obtain against positive proof and are introduced only to supply the want of real facts.

6. SAME—PRESUMPTION OF DELIVERY—REBUTTAL.

The presumption of delivery may be rebutted.

7. DEEDS—DELIVERY—INTENT.

The test of a conveyance is whether it can be said that delivery of the deed was such as to convey a present interest in the land.

8. SAME—PHYSICAL DELIVERY—PRESUMPTIONS.

Physical delivery of a deed to the grantee raises a rebuttable presumption of delivery.

9. ASSIGNMENTS—DELIVERY—PRESUMPTION—EVIDENCE.

Presumption of delivery of note and mortgage to son of payee and mortgagee, arising from son's possession for a few hours after formal assignment thereof had been made, was rebutted by evidence showing that until father's death upwards of 10 years thereafter the father had had possession thereof and receipted for payments thereon in his own handwriting on back of the note.

Appeal from St. Clair; Stewart (Shirley), J. Submitted April 4, 1945. (Docket No. 32, Calendar No. 42,965.) Decided June 4, 1945.

In the matter of the estate of Norman B. Herbert, deceased. Norman Earl Herbert presented his claim for sums collected on a mortgage. Claim dis-

allowed. Plaintiff appealed to circuit court. Claim disallowed. Plaintiff appeals. Affirmed.

*Charles Bowles,* for plaintiff.

*Walsh, Walsh, O'Sullivan & Schlee,* for defendant.

SHARPE, J. This is an appeal from a judgment of the circuit court of the county of St. Clair disallowing a claim of Norman Earl Herbert against the estate of Norman B. Herbert.

Norman B. Herbert resided in Yale, Michigan, where for several years prior to his death he was engaged in the general insurance business and maintained an office for such purpose. He died December 31, 1943.

Among his papers the following were found: A promissory note executed on September 25, 1930, by one William H. Cook to deceased due in five years in the amount of $1,500 with interest at six per cent. payable semiannually. This note was secured by a mortgage of the same date in the same amount from Cook to deceased on a farm near Port Huron. The mortgage was recorded November 12, 1930. On March 12, 1933, the mortgage appears to have been formally assigned to "Earl N. Herbert" who is the son of deceased and the same person making claim against his estate. The note carries the words "I hereby assign this note" and the signature of deceased. It is obvious that either due to wear or mutilation the legend on the note is incomplete.

About a month after Norman B. Herbert's death, his administratrix delivered the above instruments to Norman Earl Herbert who is the son heretofore mentioned. He recorded the mortgage assignment

on February 28, 1944. The balance of the principal, being $500, and interest in the amount of $12.50 owing on the note was paid to Norman Earl Herbert, who receipted therefor.

Subsequently, Norman Earl Herbert filed a claim against deceased's estate for $1,947.37 representing principal and interest collected by deceased after March 12, 1933, the date of the assignment. The claim was disallowed by the probate court. Appeal was taken to the circuit court and there dismissed on the ground that "There is no valid evidence of any intention on the part of the deceased to make delivery."

At the hearing it developed that the execution of the assignment by deceased was not questioned and it was conceded that with the exception of the payment of February 28, 1944, made to claimant, all other payments on this note were made to deceased and receipted by him on the back of the note in his own handwriting.

Claimant testified over defendant estate's objections as follows:

"*Q.* Now, when did you first see these three exhibits, the note, the assignment and the mortgage?
*  *  *

"*A.* In my father's office. That was possibly two or three weeks after the date of the assignment. I was living in Detroit at that time.

"*Q.* How did you happen to go up to Yale?

"*A.* I had a message.  *  *  *

"That was in my father's office and he was present. I stayed in his office that day several hours. My father was not present all that time. As I recall he had some business and I quite frequently ran his typewriter and did some reading in the office. I had nothing else to do and waited for him to come back.

"*Q.* And during the time he was absent, where were these papers?

"*A.* I had them. * * *

"*Q.* You say your father was gone several hours?

"*A.* Oh, yes, he was quite frequently; when I called if he had something to do he left me in the office and went about his business.

"*Q.* And do you remember whether or not your father was present when you left the office that day?

"*A.* No, as I recall it, he was gone and didn't come back. * * *

"*Q.* What did you do with them (papers)?

"*A.* I left them in his office in an envelope.

"*Q.* And then you returned to Detroit?

"*A.* Came back to Detroit.

"I saw my father frequently after that. I made frequent trips to Yale—very frequent."

Claimant has appealed to this court and contends that his testimony conclusively proves that he had possession of these papers for several hours after the assignment; and that in the absence of proof to the contrary delivery will be presumed.

"To constitute a gift *inter vivos,* there must be a delivery of the thing given, either actual or constructive. * * * It is well settled that an intention to give, evidenced by a writing, may be most satisfactorily established, and yet the intended gift may fail because no delivery is proved. *Wadd* v. *Hazelton,* 137 N. Y. 215 (33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707). Another well-settled rule in relation to such gifts is that, to make them valid, the transfer must be executed; for the reason that, there being no consideration therefor, no action will lie to enforce it. To consummate such gift, there must be such a delivery from the donor to the donee as will place the property within the dominion and control of the latter, with the intent

to transfer title to him." *Holmes* v. *McDonald,* 119 Mich. 563, 565 (75 Am. St. Rep. 430).

See, also, *In re Van Wormer's Estate,* 255 Mich. 399; *Loop* v. *DesAutell,* 294 Mich. 527; *Geisel* v. *Burg,* 283 Mich. 73; and cases cited therein.

It is equally well settled that in the absence of testimony to prove there was no delivery, the law will presume a delivery from the possession of the instrument by the grantee or donee. *Dawson* v. *Hall,* 2 Mich. 390; *Wilbur* v. *Grover,* 140 Mich. 187.

In *Blodgett* v. *Snobble,* 295 Mich. 374, we quoted with approval from *Gibson* v. *Dymon,* 281 Mich. 137, where the court said:

"Any act presumptively a delivery will not be a delivery if the intent to make it such is wanting. * * * A presumption is but a rule of procedure used to supply the want of facts. Its only effect is to cast the burden on the opposite party of going forward with the proof. * * * Presumptions of fact never obtain against positive proof and are introduced only to supply the want of real facts."

The presumption of delivery may be rebutted. In *Tighe* v. *Davis,* 283 Mich. 244, we said:

"Mere physical delivery alone, however, is not sufficient to validate the deed.

" 'The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is that act of the grantor, indicated either by acts or words or both, which shows an intention on his part to perfect the transaction, by a surrender of the instrument to the grantee, or to some third person for his use and benefit.' *Thatcher* v. *Wardens & Vestrymen of St. Andrew's Church of Ann Arbor,* 37 Mich. 264.

" 'The test is whether it can be said that delivery of the deed was such as to convey a present interest

in the land.' *Pollock* v. *McCarty,* 198 Mich. 66.
\* \* \*

"But physical delivery to the grantee raises a presumption of delivery. \* \* \* This presumption, however, is not conclusive and may be rebutted by the evidence."

The evidence produced by claimant does not show delivery of the instrument. At best the proof shows possession for a few hours. Under these facts there is a presumption of delivery. However, in our opinion this presumption of delivery has been overcome by the established facts. The note and mortgage were executed in 1930 and the assignment by Norman B. Herbert, mortgagee, was made in 1933. These instruments were retained by him during his lifetime with the exception of a few hours. The payments on the note and mortgage made periodically subsequent to the assignment covering some 10 years were also retained by the father during his lifetime. These facts rebut the presumption of delivery relied upon by claimant.

The judgment of the circuit court is affirmed, with costs to the estate.

STARR, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred.