LOPEZ v. LAZAROS.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—PREPONDERANCE OF EVIDENCE—CREDIBILITY OF WITNESSES.

The Supreme Court hears chancery cases *de novo* but will not ordinarily reverse the lower court where there is evidence and testimony to support the finding of the lower court unless justice demands it or the evidence clearly preponderates the other way, as the trial court is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity.

2. MORTGAGES—ABSOLUTE CONVEYANCE CONSTRUED AS EQUITABLE MORTGAGE—EVIDENCE.

Preponderance of evidence in suit by illiterate plaintiff to have an absolute conveyance declared an equitable mortgage *held*, to support decree that instrument was a mortgage and security for indebtedness owed by plaintiff to defendant.

Appeal from Wayne; Streeter (Halford I.), J.,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 703.
[2] 36 Am Jur, Mortgages § 125 *et seq.*

presiding. Submitted February 5, 1963. (Calendar No. 44, Docket No. 49,839.) Decided March 7, 1963.

Bill by Cruz Lopez against Thomas Lazaros to declare deed an equitable mortgage and for accounting. Decree for plaintiff. Defendant appeals. Affirmed.

*Robert D. Anspach* and *Michael K. Anspach* (*A. Lewis Fineberg,* of counsel), for plaintiff.

*Richard W. Deutsch,* for defendant.

Kavanagh, J. Plaintiff filed a bill of complaint in the circuit court for the county of Wayne alleging that prior to July 26, 1957, he was the owner of a certain house and lot described as 920 Porter street in the city of Detroit.

Plaintiff alleges he was indebted to defendant in the amount of approximately $3,200; that defendant requested him to go to an attorney's office for the purpose of executing a paper to secure repayment of this money; that he went to the office of defendant's attorney and there signed a paper which he thought was a mortgage of the property.

Plaintiff also alleges he is uneducated and unable to read, and that he relied upon the assurance of defendant that the instrument signed by him was a mortgage. Plaintiff further alleges that defendant made additional advances to him in the amount of $1,000.

Plaintiff claims he made payments on his indebtedness to defendant, which defendant called "rent" and which plaintiff intended to be applied upon the principal and interest on the mortgage. He further claims defendant repeatedly promised plaintiff that upon payment of the money due him, together with interest, plaintiff would get his property back.

Plaintiff also claims he paid to have a certain cornice removed from the house pursuant to an order from the city. In addition to this, he claims to have made numerous repairs. The cornice was removed and the repairs were made after consultation with defendant and on the representation of defendant that plaintiff was to get the property back anyway and that he, the defendant, was not going to put any more money into it.

Thereafter, when proceedings were begun by the city of Detroit to condemn the premises involved, plaintiff was served with a notice to quit by defendant. Plaintiff claims he then discovered the instrument he had executed was a deed to the property rather than a mortgage. He prays that defendant be required to account for all moneys received and that the deed be declared to be an equitable mortgage.

Defendant answered setting forth that he had purchased the property from plaintiff, and that plaintiff had paid rent to the defendant for several months after giving the deed. Defendant gave notice of the affirmative defenses of (1) absolute deed; (2) laches.

The trial court decreed the instrument to be a mortgage and security for the indebtedness owed by plaintiff to defendant.

Defendant is here on appeal with 1 question:

"Did the plaintiff maintain the burden of proving that by fraud or mutual mistake a deed was delivered intended to be a mortgage?"

The record discloses plaintiff's ability to write English is restricted to signing his name. He testified he could not read English and did not know the difference between a deed and a mortgage. It was his understanding that "any time I have the money, he will give me the house back."

An experienced appraiser testified the property

was worth $11,000 in 1960, and it was his opinion the value had not changed from 1957 when the instrument in question was executed. The consideration for the purported absolute conveyance was $3,200.

There were facts which were known to the attorney who represented defendant at the time of the disputed conveyance which at least raised a question as to plaintiff's marital status. Yet he drafted the instrument describing plaintiff as a single man. No attempt was made to examine the abstract or obtain title insurance.

The carpenter who performed work on the house subsequent to the execution of the deed testified as follows:

"*Q.* Did you ever discuss the necessity of these repairs, in the presence of Mr. Lazaros? Did you ever talk over with Mr. Lazaros or with Mr. Lopez, at a time when Mr. Lazaros was present?

"*A.* Yes, about the building, yes.

"*Q.* What was said and what was done at that time?

"*A.* Well he informed Cruz to go ahead and have the work done, that he didn't want to put no more money in the place; that he had loaned him some money, and he was expecting to get it back, and he didn't want to put no more money in the place. So he said, 'You go ahead and have it fixed,' he says, 'you'll benefit as soon as you pay the money you owe me, and I'm going to give it, you'll have the property free and clear.' "

While the above is by no means a complete recital of the evidence, we believe it constitutes facts from which a court could reasonably reach the determination made by the trial court below.

We said in *Mousseau* v. *Walker,* 356 Mich 373, 379:

"Although this Court on appeal hears chancery cases *de novo,* it ordinarily will not reverse the lower court where there is evidence and testimony to sup-

port the finding of the lower court unless justice demands it, or it can be said that the evidence clearly preponderates the other way, the trial judge being in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity." (Citing cases.)

From our review of the entire record, we conclude the preponderance of the evidence supports the decree of the trial court.

Affirmed. Costs to plaintiff.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, OTIS M. SMITH, and O'HARA, JJ., concurred.