OSIUS *v.* DINGELL.

1. GIFTS—TITLE—DELIVERY—ACCEPTANCE.

Essentials to constitute a valid gift *inter vivos* are that the donor possess an intent to pass gratuitously title to the donee, that actual or constructive delivery be made, and that the donee accept the gift.

2. SAME—DELIVERY.

To effectuate delivery of a gift *inter vivos* the property must be placed within the dominion and control of the donee.

3. SAME—TRANSFER OF OWNERSHIP.

A gift *inter vivos* must be fully consummated during the lifetime of the donor and must invest ownership in the donee beyond the power of recall by the donor.

4. SAME—PRESUMPTION OF ACCEPTANCE.

Acceptance of a gift by the donee is presumed where the gift is beneficial.

5. APPEAL AND ERROR—EQUITY JURISDICTION—CREDIBILITY OF WITNESSES.

Cases involving equity jurisdiction are reviewed by the Supreme Court *de novo,* but ordinarily the lower court will not be reversed where there is testimony to support its finding unless justice demands or the evidence clearly preponderates the other way, primarily where there is involved a determination as to the credibility of witnesses.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur, Gifts § 20 *et seq.*
[2, 3] 24 Am Jur, Gifts § 24 *et seq.*
[4] 24 Am Jur Gifts, §§ 40, 117.
[5] 5 Am Jur 2d, Appeal and Error §§ 609, 772, 831.
[6] 5 Am Jur 2d, Appeal and Error § 880.
[7] 24 Am Jur, Gifts § 77 *et seq.*
[8] 54 Am Jur, Trusts § 44.
[9] 54 Am Jur, Trusts § 610.
[10] 54 Am Jur, Trusts §§ 33, 52 *et seq.*
[11] 54 Am Jur, Trusts § 109.
[12] 54 Am Jur, Trusts §§ 26–28.
[13] 54 Am Jur, Trusts §§ 44, 610.

6. Same—Finding of Trial Court—Trusts—Gifts—Evidence.

Finding of trial court that plaintiff, an elderly widow, had created an oral trust of stock certificates rather than a gift *inter vivos* is not reversed where justice does not require it, it appears she lacked the donative intent sufficient to support a gift *inter vivos*, and the evidence not only does not clearly preponderate in the opposite direction but amply sustains the trial court's determination.

7. Trusts—Finding of Trial Court—Evidence—Gifts.

Plaintiff's claim and trial court's finding that purchase of stock certificates by plaintiff, an elderly widow, naming herself and defendants "as joint tenants with right of survivorship and not as tenants in common" was pursuant to an oral revocable trust was supported by fact that title was so placed rather than a complete divestiture of title and that arrangement with the defendants for receiving all dividends by plaintiff for her lifetime were made and respected, the fact that stock certificates were actually delivered to the defendants not being decisive of the gift issue in view of other evidence.

8. Same—Personalty—Parol.

A valid trust in personalty may be created by parol.

9. Same—Personalty—Parol Trust—Evidence.

A parol trust of personalty must be established by parol evidence that is clear and satisfactory and find some support in the surrounding circumstances and conduct of the parties.

10. Same—Intent—Transfer of Property.

A trust is created only if the settlor manifests an intention to create a trust and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another.

11. Same—Stock Certificates—Public Policy.

Registration of shares of stock in the names of plaintiff and defendants "as joint tenants with right of survivorship and not as tenants in common" for the use and benefit of defendants' child of tender years, specifically for his college education, and reserving life income therein for plaintiff and the right to revoke the trust *held*, a valid trust revocable upon the condition subsequent of her revocation during her lifetime, not being testamentary nor in contravention of public policy.

12. Same—Reservation of Right to Revoke—Vesting of Benefi-
ciary's Interest.

> The reservation of right to revoke trust that is created by settlor,
> an elderly widow, whereby the beneficiary would have had the
> same vested interest at the settlor's death if the settlor had not
> exercised her right to revoke the trust as when the trust was
> created, effected a disposition that is not testamentary, the
> death of settlor being referable to her right to revoke rather
> than the time when the beneficiary's interest would vest.

13. Same—Oral Revocable Trust—Evidence.

> Evidence amply supported trial court's finding that purchase of
> stock by plaintiff and registration of certificates in her and
> defendants' names "as joint tenants with right of survivorship
> and not as tenants in common" was for the benefit of defend-
> ants' son to provide college education, and effected an oral
> revocable trust, where it appears there was a reservation of
> life income from the stock, and right to revoke the trust.

Appeal from Wayne; Canham (James N.), J.
Submitted October 9, 1964. (Calendar No. 27, Dock-
et No. 50,581.) Decided May 11, 1965.

Complaint by Mary G. Osius against Louis F.
Dingell, Helen J. Dingell, and Robert E. Childs,
guardian ad litem of David Dingell, a minor, for
declaratory relief that plaintiff is owner of certain
corporate stock and that this stock be ordered
returned to plaintiff from defendants. Judgment
for plaintiff. Defendants appeal. Affirmed.

*Piggins, Balmer, Grigsby, Skillman & Erickson,*
for plaintiff.

*Robert E. Childs,* for defendants.

Smith, J. Defendants appeal from a judgment
restoring 200 shares of Toledo Edison stock to plain-
tiff as sole owner. Previously, plaintiff had pur-
chased the stock and registered it in her name and
that of Louis F. Dingell and Helen J. Dingell "as
joint tenants with right of survivorship and not as

tenants in common." Defendants Louis F. and Helen J. Dingell are the parents of David Dingell, a minor. Plaintiff is not related to either defendant by blood or by marriage.

At the time of trial in 1963, plaintiff, a widow since 1933, was around 90 years of age and resided in a home for the aged. After serving in the Dingell home for several years as "baby sitter" to David, plaintiff purchased in 1956, with her own money, the stock and had it registered in joint names as set out above. Two stock certificates representing 200 shares were handed to Mr. Dingell by Mrs. Osius. There was no consideration passing between the Dingells and plaintiff, Mrs. Osius; the transaction was intended primarily for the benefit of young David, more specifically his college education. It is the nature of the transaction that is in question. Was it a completely executed gift *inter vivos* as appellants contend? Or was it a parol trust with right to revoke, as plaintiff contends?

The trial court found that Mrs. Osius "intended to create a trust with the defendants Mr. and Mrs. Dingell as trustees and the intervening defendant David as beneficiary of said trust." The trial court concluded that "there can be no question the plaintiff created an oral trust when she gave the defendants Mr. and Mrs. Dingell the *specific and undisputed instructions* concerning a corpus of the trust, namely, use it for David's education *at her death,* retaining *for herself the dividends during her lifetime.*" (Emphasis supplied.) There is no dispute about the dividends. By arrangement of the parties, Mrs. Osius has received all dividends and has had exclusive use of same.

The transaction deserves even closer scrutiny, particularly the testimony as to conversations between Mrs. Osius and the Dingells around the time

Mrs. Osius handed the stock certificates to Mr. Dingell. In response to a question about a brief conversation had with Mr. Dingell about a week prior to handing Dingell the stock certificates, Mrs. Osius had this to say:

"Well, I went up to him where he was sitting in the chair, and I said, 'I have stock', and that I am having — I have stock and that *it will be for David after my death,* but I am to have that, *and sometime I may need it myself, but I am to have that stock in my own name whenever I want it,* and I said, 'Do you understand?'

"He said, 'Yes' — excuse me —he said, 'Oh, yes, oh, yes,' and smiled when I told him about the stock.

"I said, *'But that is mine until my death.'* " (Emphasis supplied.)

Mrs. Osius testified further that about a week later these events transpired in the Dingell home:

"*A.* Well, I held the stock in my hand and I said, 'Here is the stock.' I didn't say — I didn't give it to him, and I held it in my hand, and I said, 'Here is the stock.'

"I said, *'Now, you promise, you understand that belongs to me' that I am to have that while I am living.* After my death it is to go for David's education, and Mr. Dingell said yes, but he didn't — He said, 'Oh, yes', but he didn't say 'Oh, yes, oh, yes' like he did the first time and smiling, and he just said it.

"*Q.* On this occasion you have [*sic*] the stock certificate with you; is that right?

"*A.* I had it with me and not until he promised that he understood that that was to be mine that I released it from my hand. I just handed it to him." (Emphasis supplied.)

While the Dingells had possession of the stock certificates, Mrs. Osius received the dividends therefrom. There were no other conversations about

the stock until 5 years later in 1961. At this time, Mrs. Osius contacted Mr. Dingell and they discussed the desire of Mrs. Osius to sell the stock and purchase other stock with a higher dividend yield, Mrs. Osius explaining that she needed additional money for medical expenses. Mr. Dingell refused to surrender the stock certificates, but did offer to give Mrs. Osius periodic amounts which would serve to compensate for the low yield of the stock.

Mr. Dingell's testimony about conversations had with Mrs. Osius in 1956 differs from hers. He says that she expressed a desire to make "a gift" of the shares. He testified as follows:

"She said she wanted to give me everything needed in honoring of these shares to make sure, no matter whatever happened to her, David would have a college education."

Likewise, Mr. Dingell's recollections of the 1961 conversation with Mrs. Osius differed, but only slightly. He said that she expressed a desire to sell the stock and reinvest in a mutual fund which had a higher yield. In addition, Dingell testified as follows:

"She did at that time realize that I had to have my name on that stock and my wife would have to have her name on the stock so that the stock would be able to be converted to Wellington Fund stock."

Sometime after this conversation in the summer of 1961, plaintiff consulted counsel who wrote a letter to defendants demanding the stock certificates; upon refusal by defendants, suit was instituted by the filing of a bill of complaint on November 17, 1961. From a judgment entered October 25, 1963, defendants have appealed. Review in this Court is *de novo.*

It may be stated generally that the three elements necessary to constitute a valid gift are these: (1) that the donor must possess the intent to pass gratuitously title to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift. *Buell* v. *Orion State Bank,* 327 Mich 43. It is essential that title pass to the donee. *Taylor* v. *Burdick,* 320 Mich 25. As to delivery, it must be unconditional and it may be either actual or constructive; the property may be given to the donee or to someone for him. *In re Herbert's Estate,* 311 Mich 608. Such delivery must place the property within the dominion and control of the donee. *In re Herbert's Estate, supra.* This means that a gift *inter vivos* must be fully consummated during the lifetime of the donor and must invest ownership in the donee beyond the power of recall by the donor. *Lumberg* v. *Commonwealth Bank,* 295 Mich 566. As to acceptance, it is said that the donee is presumed to have accepted the gift where such is beneficial. *Buell* v. *Orion State Bank, supra.*

The crucial question here is one of fact. What did Mrs. Osius intend? To make a gift of the stock or to create a trust with right of revocation? The trial judge who saw and heard the witnesses found as follows: "It is readily apparent to the Court," he wrote, "Mrs. Osius, the plaintiff, intended to create a trust with the defendants Mr. and Mrs. Dingell as trustees and the intervening defendant David as beneficiary of said trust."

Cases involving equity jurisdiction are reviewed in this Court *de novo,* but ordinarily the Court will not reverse the lower court where there is evidence and testimony to support the finding of the lower court unless justice demands, or the evidence clearly preponderates the other way. Primarily, this is because the trial court is in better position to deter-

mine the credibility of witnesses by observing their
conduct and demeanor in court, an opportunity
which the reviewing court on appeal obviously does
not have. *Mousseau* v. *Walker,* 356 Mich 373; *Lopez*
v. *Lazaros,* 369 Mich 477.

The trial court found that a trust was intended
and not a gift *inter vivos.* We do not reverse be-
cause justice does not require it, nor does the evi-
dence clearly preponderate in the opposite direction.
If anything, the evidence amply sustains the trial
court's finding and also, concordantly, justice re-
quires affirmance. The evidence sustains the finding
that, among other things, Mrs. Osius lacked the
donative intent sufficient to support a valid gift
*inter vivos.* On this point, the objective facts sup-
port the subjective testimony of Mrs. Osius. She
testified that she clearly explained to Mr. Dingell
as she handed over the certificates her intent to
reclaim or revoke if the need should arise. Support-
ing this testimony are the objective facts that she
registered the stock not in the name of David or of
his parents, as she might have done, but in the
names of herself and the parents as joint tenants.
Also, plaintiff Osius arranged to receive all divi-
dends. Defendants dispute the tenor of the conver-
sation and also point to the fact that plaintiff turned
over the stock certificates to Mr. Dingell. The
handing over of stock certificates to Mr. Dingell by
Mrs. Osius is not decisive of the gift issue, in view
of other relevant facts such as the legal estate
created and the announced purpose of the trans-
action, including the right of revocation retained
by Mrs. Osius. Viewing all the evidence, we con-
clude that the trial court's finding should not be
disturbed because we cannot say that the evidence
clearly preponderates in favor of defendants' claim
of gift, proof of donative intent being especially
lacking.

We turn now to the trust issue which, by general allegations in the complaint and answer made thereto, was also litigated below. Part of the law pertaining to express trusts is the rule that a valid trust in personalty may be created by parol. *Economy* v. *Roberts,* 274 Mich 484. To establish a trust of personalty, parol evidence must be clear and satisfactory and find some support in the surrounding circumstances and conduct of the parties. *Harmon* v. *Harmon,* 303 Mich 513. In determining whether a parol trust exists, the facts of the case must be examined in the light of general principles of the law relating to trusts. *Economy* v. *Roberts, supra.* It is a general principle of trust law that a trust is created only if the settlor manifests an intention to create a trust, and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another. *Harmon* v. *Harmon, supra,* and *Pierowich* v. *Metropolitan Life Insurance Company,* 282 Mich 118.

In this case, Mrs. Osius had the shares registered in her name and that of Mr. and Mrs. Dingell for the beneficial use of David. Here was a valid transfer of stock to trustees for the use and benefit of another. Purpose of the trust was to provide for the future education of David, a child then of tender years. The owner of property may thus create a trust not only by transferring the property to another person as trustee, but also by declaring himself trustee or one of the trustees. 1 Scott on Trusts (2d ed), § 57.6, p 475. But Mrs. Osius expressly reserved income from the trust property for her life and also was found to have reserved the right to revoke the trust.[1] Is this valid?

---

[1] The trial judge did not state specifically that he found as a fact that plaintiff had reserved the right to revoke but it is necessarily implied from one of his holdings and also from the relief accorded plaintiff.

In answer, we may say that a long line of cases holds that the owner of property may declare himself trustee to pay the income to himself during his life and subject thereto upon trust for another person. And where there is also the power of revocation such a trust is not necessarily testamentary. 1 Scott on Trusts (2d ed), § 57.6, p 475, and cases cited thereunder. Intent and purpose may be gleaned from all the facts and circumstances, and where after careful scrutiny the court finds the trust not purely testamentary and not in contravention of public policy, it will be upheld. *Goodrich* v. *City National Bank & Trust Company of Battle Creek,* 270 Mich 222; *Rose* v. *Union Guardian Trust Company,* 300 Mich 73. In the *Goodrich Case,* the settlor, by express trust instrument, reserved a life income for himself and the right to use or dispose of the corpus, including the right to revoke the trust, in whole or in part. In examining the trust instrument, together with the facts and circumstances surrounding it, this Court upheld the trust. The beneficiaries were found to have taken a vested interest immediately and the powers reserved by the settlor were interpreted as "conditions subsequent, upon the happening of which vested interests would have become divested." In other words, as to this point the Court found that the disposition was not testamentary which, if so, would have voided the arrangement, there being no compliance with the statute of wills.[2] In the instant case, we find the facts to be analogous and thereby reach the same conclusion as to validity of the trust.

Here, Mrs. Osius had the corpus (shares) registered in her name and that of Mr. and Mrs. Dingell as trustees for the beneficial enjoyment of David. Legal title was taken by the trustees and equitable

---

[2] CL 1948, § 702.1 *et seq.* (Stat Ann 1962 Rev § 27.3178[71] *et seq.*). —REPORTER.

title vested immediately in David subject to divestment on occurrence of the condition subsequent: revocation by the settlor during her lifetime. That she retained the right or power to revoke during her lifetime did not make this a testamentary disposition under the decision in the *Goodrich Case*. We conclude as in *Goodrich* that "The testimony is not convincing that Johnson's [settlor's] sole purpose was to make a testamentary disposition." In the instant case, we think it significant that Mrs. Osius chose the type of transaction as appears here. She did not constitute of herself a trustee alone, as appears in many purely testamentary dispositions, but in effect appointed herself trustee along with the parents of David.

It is also important to analyze the testimony of Mrs. Osius in light of other circumstances. It is true that she expressed the intent and purpose of providing for David's education after her death. But in view of her advancing years plus the understanding of the parties that she was providing not for David's present education but his college education in the future, her death was referable to her right to revoke rather than to the time when David's interest might become vested. David would have had the same interest if Mrs. Osius had died without exercising her right to revoke as he did when Mrs. Osius had the trust created in 1956, namely, a vested interest. Therefore, reservation of the right to revoke did not make the disposition testamentary. This is the legal effect of what transpired.

In all such cases, the intent of the settlor is a crucial question especially where a parol trust is created. *Thompson* v. *Stehle*, 367 Mich 284. If the transaction was legally valid as we have just concluded, the final question is whether or not the trial judge's findings of fact as to whether Mrs. Osius intended to create this type of trust is supported by

the evidence. In view of the rule of review already stated, we cannot say that the evidence preponderates in the opposite direction. As clearly indicated above by our extended discussion of the facts, we are satisfied that the evidence amply supports his findings.

Judgment is affirmed. Costs to appellee.

T. M. KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, O'HARA, and ADAMS, JJ., concurred.