In re Jack VAN HOUTEN, d/b/a
Vanguard Distributors, Debtor.

Richard C. REMES, Trustee, Plaintiff,

v.

Bertha ROBISON, Defendant.

Bankruptcy No. HK 83 00681.
Adv. No. 84 444.

United States Bankruptcy Court,
W.D. Michigan.

Jan. 10, 1986.

Robert E.L. Wright, Stanley, Davidoff & Gray, Kalamazoo, Mich., for trustee.

Richard B. Oole, Bergstrom, Slykhouse, Quinn & Oole, Grand Rapids, Mich., for defendant.

Ronald J. Vander Veen, Cunningham, Mulder & Breese, Holland, Mich., for Edith Labz, creditor.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

### REMAINDER INTEREST AND PROPERTY OF THE ESTATE

The trustee, Richard C. Remes, asks the Court to declare the life estate of Bertha Robison invalid. Alternatively, the trustee requests the debtor's interest as remainderman be recognized as property of the estate and that he be permitted to sell the property. Defendant Bertha Robison denies the trustee's allegations and prays this Court to declare that the bankruptcy estate has no interest whatsoever in the subject real estate.

At the trial, the following facts became clear. Bertha Robison wrote to the Old Kent Bank and Trust Company on February 20, 1981, to request that her home be removed from her revocable grantor trust. She asked that her home be deeded to her brother, Peter J. Van Houten, and her nephew, Jack L. Van Houten, as joint tenants with full right of survivorship, subject to a life estate in Bertha Robison's favor. Mrs. Robison, who was 87 years old at the time, explained in her letter that she was doing this for estate planning purposes.

Accordingly, Old Kent Bank drew up and executed a deed of trustee to Peter J. and Jack L. Van Houten on March 12, 1981. Included in the description of the property is the sentence, in capital letters:

A LIFE ESTATE IN FAVOR OF BERTHA ROBISON IS HEREBY IMPOSED AND GRANTED.

The deed is signed by an assistant vice-president of the Bank, Frederick W. Gaul, and two witnesses. The deed does not bear the signature of either Van Houten, nor of Bertha Robison, nor any indication they received or acknowledged the deed. The deed recites that a consideration of one dollar was received, but in fact no such payment was made. Although Bertha Robison gave no instructions as to recording the deed, the Bank did so on March 17, 1981, pursuant to a Bank policy that they leave no deed unrecorded.

Peter J. Van Houten died in September, 1981. His son, Jack Van Houten, filed a petition for relief under the Bankruptcy Code on March 11, 1983.

Bertha Robison lived in her home until July, 1983, when she was transferred to Beacon Light Rest Home in Marne, Michigan. Her house is rented now, and the rental income, after payment of the real estate taxes, is applied to her expenses at the home. This income, however, does not cover all of Mrs. Robison's expenses; the difference comes from her trust fund, thereby depleting the trust corpus. Mrs. Robison is 91 years old now, but she is in good physical condition and her attorney has informed the Court that there is a real possibility her continued care might exhaust the trust fund. Although her physical condition is good, her mental capacity has diminished. Mrs. Robison is a legally protected person under Michigan law, and her niece, Mrs. Bonnie Bustraan, has been appointed her guardian. Mrs. Robison did not appear at the trial, and all the parties stipulated that her present mental capacity would not allow her to assist the Court in any way.

Among Jack Van Houten's creditors at the time of the filing of his petition was Edith Labz. She met Jack Van Houten when he sold her an alarm system about ten years ago. Since that time she had loaned Mr. Van Houten various sums of money. Mr. Van Houten told her he would

inherit his aunt's home and other property. After his filing Miss Labz commenced an adversary proceeding to object to the debtor's discharge, asserting that the debtor had concealed assets of the estate by not listing certain assets, including his interest in his aunt's home. That adversary proceeding was adjourned without date after the death of the debtor, Jack Van Houten.

■ The death of Mr. Jack Van Houten, along with that of his father, Mr. Peter Van Houten, also created certain problems in this trial. Those two gentlemen and Bertha Robison were the principal actors in the story brought before the Court, yet none of them could testify. Given the inherent difficulties of such a situation, defendant's counsel sought the admission of the transcript of a deposition of the debtor taken by Edith Labz's attorney during her adversary proceeding. (Defendant's Exhibit C) The defendant also introduced a copy of a letter giving notice of that deposition to, among others, the attorney for the trustee. (Defendant's Exhibit B) The defendant argued that although the deposition would otherwise be hearsay and barred under Federal Rule of Evidence 802, it was admissible under the exception found at Rule 804(b)(1) which provides that

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

The court reserved its ruling on Exhibits B and C. The defendant and plaintiff trustee addressed their arguments to the issue of whether exhibit B, the letter of notice, con-

stituted an "opportunity" for the trustee to to cross-examine the deponent. Were the Court to rule on that question, it would be inclined to deny admission because the trustee was not a party to that adversary proceeding and therefore "at the time the testimony was given, had a naked opportunity but no real need or incentive to thoroughly cross-examine" or to even attend the deposition. *United States v. Franklin,* 235 F.Supp. 338, 341 (D.D.C.) *rev'd on other grounds,* 330 F.2d 205 (D.C.Cir.1964). However, Rule 804(b)(1) provides that former testimony is admissible if a "predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The Sixth Circuit has held that the term "predecessor in interest" should not be so narrowly interpreted as to require privity[1], but rather that

> "if it appears that in the former suit a party having like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party." Under these circumstances, the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party.

*Clay v. Johns-Manville Sales Corp.,* 722 F.2d 1289, 1295 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984) (quoting *Lloyd v. American Export Lines, Inc.,* 580 F.2d 1179, 1185 (3rd Cir.), *cert. denied,* 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978)). In this present suit the trustee seeks to establish that the debtor owned Bertha Robison's home, either outright or subject to a life estate in her favor. In the previous suit in which the deposition was taken, Edith Labz sought to establish that the debtor owned certain property he failed to scheduled including Bertha Robison's home. Therefore, since Edith Labz had an opportunity

---

1. The interpretation of "predecessor in interest" as requiring privity is advocated by 11 Moore's Federal Practice § 804.04[2] at page VIII–265) 1985.

to develop testimony about the same matter the trustee is interested in, the ownership of the home, and since Edith Labz, like the trustee, needed to establish the debtor's ownership of that home in order to prevail, she is the predecessor in interest of the trustee and Exhibit C, the deposition, is admitted.[2]

This case presents three issues:

-whether the deed is an accomplished gift, and if so

-whether the deed creates or reserves a life estate to or for Bertha Robison, and

-whether that deed may now be reformed or rescinded.

The conclusion that the gift was never accomplished and the deed is therefore ineffective would render the second and third issues moot.

Under Michigan law there are three elements necessary to a gift:

1) the donor must possess the intent to gratuitously pass title to the donee;

2) an actual or constructive delivery is essential to to effectuate a gift; and

3) in order for the gift to be consummated, the donee must accept it, although a gift beneficial to the donee will be presumed to have been accepted.

*Buell v. Orion State Bank*, 327 Mich. 43, 55, 41 N.W.2d 472 (1950). The parties contest both delivery and acceptance in their briefs.

■ As to delivery, the debtor in his deposition maintained that he had never received the deed, in fact he stated that he had never seen it until he was given a copy just before the deposition.[3] The deposition testimony is supported by and indeed rendered superfluous by the testimony in court. Mrs. Robison's attorney testified that he prepared the deed at Mrs. Robison's instruction and sent it to the Bank.

Mr. James Dice, Old Kent's Vice-President for trust operations, testified that the Bank executed the deed, recorded it, and apparently retained it. The attorney testified that he never received the original back, but he did receive a copy which he kept in Mrs. Robison's file. He further testified that he never gave a copy to Mrs. Robison nor to either of the Van Houtens, that he never informed the Van Houtens' of the deed, and that although it is likely he informed Mrs. Robison of the deed's execution, he does not remember doing so. Mr. Dice also testified that he never informed the Van Houtens' of the deed nor sent them a copy. It is clear then that there was never a physical delivery of the deed to anyone. This however does not preclude a finding of a "delivery", either actual or constructive.

The Michigan Supreme Court has written of delivery that:

It has been held that retained possession by a grantor of a voluntary deed of gift or settlement is not inconsistent with its enforcement, if intended to be effectual, and if capable of transferring title by its terms. But where, if delivered, it would not have been operative as an assignment, it will fail, because amounting to no more than an executory agreement.

*Ellis v. Secor*, 31 Mich. 184, 188–189 (1875). In *Ellis* the grantor, Rachel Hill, had been found dead in her bed. By her bedside was a note giving everything she had to Dr. Ellis and stating that she was so sick she believed she would die. A second note was found in which she again stated that she gave everything to Dr. Ellis, and giving him certain instructions. The grantor died intestate, and administrator, Secor, sued to recover all the grantor's property from Dr. Ellis. The only issue was whether the notes created a present gift despite the lack of any physical or verbal delivery.

---

**2.** As this holding upon the "predecessor in interest" ground renders Exhibit B, the cover letter pertaining to "opportunity" irrelevant, it is not admitted.

**3.** In the briefs some attention was given to whether this could be an actual physical delivery, but since it was not given to the debtor by his aunt this incident could not be a delivery, but a mere, and passing, possession. *In re Herbert's Estate,* 311 Mich. 608, 19 N.W.2d 115 (1945).

The Michigan Supreme Court held that as the grantor's intent to make a present gift was undoubted, that as she apparently believed she had done such, and that as she had done all she could given her illness, therefore the written notes created a gift *causa mortis* and prevailed "as fully as if there had been a manual delivery." 31 Mich. at 192.

The Michigan Supreme Court has also stated that:

One of the essential requisites to the validity of a deed, so as to pass the title, is delivery. Even although in all other respects it has been properly executed, yet it does not follow that the title to the property passes; the grantor yet retains control of the instrument, and may deliver it, absolutely, conditionally, or not at all. The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is that act of the grantor, indicated either by acts or words or both, which shows an intention on his part to perfect the transaction, by a surrender of the instrument to the grantee, or to some third person for his use and benefit. The whole object of a delivery is to indicate an intent upon the part of the grantor to give effect to the instrument.

*Thatcher v. St. Andrew's Church*, 37 Mich. 263, 268 (1877). In *Thatcher*, the grantee, Mrs. Mundy, executed a deed of trust for certain real estate and left it in the possession of her attorney. After executing the deed Mrs. Mundy continued in sole and exclusive possession of all her property, and sold some of the subject real estate. The trustees never learned of the deed's existence until after Mrs. Mundy's death. Nonetheless the Michigan Supreme Court found a sufficient delivery to render the

deed valid, for in leaving the deed with her attorney

"it was her intention to do whatever was necessary to make the deed valid and effectual; and the delivery to or leaving it with him was intended by her to give it effect as a valid instrument." She at this time was informed by her attorney that such 'was a good and sufficient delivery of it to make it operative.'

37 Mich. at 270 (quoting the trial court's findings of fact.) From these cases the Court draws the lesson that a "delivery" is a word or act indicating the grantor's intent to give immediate effect to an instrument creating a present transfer of title.

The clearest indication of Mrs. Robison's intent[4] is the letter of February 20, 1981.[5] In that letter she asks the Bank to remove her home from the trust and to deed it to her brother and nephew, reserving a life estate to herself. However, an ambiguous note is introduced by the last sentence in which she states that she is doing this for estate planning purposes. That last line could fairly be read as indicating an intent that the transfer not be effective immediately, but only upon her death. However, the testimony of Mrs. Robison's attorney erases any doubt as to whether Mrs. Robison intended the deed to have a present effect or a merely prospective one. The attorney testified that Mrs. Robison "wasn't overly happy that her house was in the Trust," and that "[s]he just apparently wanted a sense of security that it would not be in the Trust." Mrs. Robison wanted her house out of the Trust at that moment; the deed is the instrument that achieved that goal by transferring the house from the trust to the Van Houtens' subject to Mrs. Robison's life estate, and if the deed was to effect the removal it must be effective in all of its provisions. There-

4. Although the deed names the Old Kent Bank as grantor, it is grantor by virtue of its role as trustee for Mrs. Robison's trust. As that trust is a revocable grantor trust that Mrs. Robison could amend at any time, the Bank was, in a matter such as this, merely her agent, its intent presumably would be to carry out Mrs. Robison's intent, and any manifestations of an inconsistent intent, absent some detrimental re-

liance upon apparent authority (not alleged here) would be irrelevant.

5. The defendant never moved the admission of this letter; as the plaintiff stated on the record he had no objection to its admission it is deemed so moved and admitted.

fore the Court finds that Mrs. Robison indicated her intent to give immediate effect to a present transfer of title in a manner sufficient to constitute delivery. The Court is well aware of the paradox that the very step Mrs. Robison took for her security actually compromised her security, but the conclusion is inescapable.

 As noted above, acceptance of a beneficial gift will be presumed, at least until it is rejected. No evidence was introduced at the trial of a rejection by the debtor prior to his petition in bankruptcy. Upon the filing of that petition the right to accept or reject passed to the estate under 11 U.S.C. § 541(a). *Horton v. Moore,* 110 F.2d 189 (6th Cir.1940). Although the estate has submitted no formal acceptance, the institution of this suit is ample evidence of the estate's intent to accept, if such acceptance is even required.

Having established that the deed of gift has been delivered and accepted, the next question is whether it creates a valid life estate.

 The trustee has given two arguments why the life estate of Bertha Robison is invalid. The first argument he has advanced is that Mrs. Robison is not named as a party in the deed, nor is her address included as required by M.S.A. § 26.1221(f) [M.C.L.A. § 565.201(f)]. As to the inclusion of Bertha Robison's name, it is true that she is not denominated as a "party" as such, but her name is mentioned once in the Trust's name, and her name is quite prominently included in the clause creating the life estate. It is very clear she is the beneficiary of the life estate. As to her address, § 26.1221(f) [M.C.L.A. § 565.201(f)] does require that such a document include the address of each grantee. The deed includes both a legal description and the street address of subject property, and it is clear that is where Mrs. Robison would be found henceforth. Further, § 26.1221(e) [M.C.L.A. § 565.201(e)] provides that any document received for recording and recorded, as this one was, "shall be conclusively presumed to comply with the re-

quirements of this act." The name and address given here are sufficient.

 The Trustee's second ground is that since certain words prior to those creating the life estate might be taken as words of grant of a fee simple, the life estate language is "mere surplusage." The Court would first note that the creation of the life estate is included within the description of the property and would be more easily read as a restriction upon the extent of the property interest granted the Van Houtens. Further, there are words of grant following the life estate language also, so it isn't clear that everything the Bank held was conveyed away in paragraph 3 "before" the creation of the life estate farther down the page. The plain language alone indicates a life estate was intended for Mrs. Robison, and if there is any ambiguity the intent to effect such a life estate is clearly manifested and binds this Court. *Taylor v. Taylor,* 310 Mich. 541, 17 N.W.2d 745 (1945). In *Adams v. Fisher,* 143 Mich. 673, 107 N.W. 705 (1906) a life estate clause was inserted not within the description but after it and the Court ruled that it was not a contrary habendum, but rather a part of and a limitation of the grant and therefore valid. The Court concludes that this life estate is also valid.

 Given that the defendant holds a life estate and that the plaintiff holds the remainder, two contradictory requests confront the court. The life tenant seeks to rescind the deed and to regain the estate in fee simple absolute because the deed was part of a now frustrated estate plan and because the equities favor her. For authority the defendant relies upon *Stone v. Stone,* 319 Mich. 194, 29 N.W.2d 271 (1947) in which rescission was permitted when a United States Supreme Court decision rendered a previous transfer from parents to children highly disadvantageous by striking down the anticipated tax benefits. The defendant also relies upon *Meyer v. Schaub,* 364 Mo. 711, 266 S.W.2d 620 (1954), in which rescission was permitted because the quitclaim deed was made for no consideration by a seriously ill elderly

898

woman in a distraught condition. However, in making this transfer Mrs. Robison did not rely upon some legal theory later discredited, nor has any party alleged she was ill, distraught or under undue influence. The only ground alleged for rescission is frustration of the estate plan. Under *Schmalzriedt v. Titsworth*, 305 Mich. 109, 9 N.W.2d 24 (1943), however, mere frustration of an estate plan, absent a showing of some fiduciary relationship, inequitable conduct or result, or mistake of fact, was insufficient to justify rescission of a deed. There are many equities in Mrs. Robison's favor: her age, her need for all her resources to support herself in the rest home, her diminished mental capacity, and no showing by her nephew's creditors that they justifiably relied on anything more than his claims to an eventual inheritance. Nonetheless, this Court sadly concludes that it cannot set aside a deed freely given simply because events do not turn out as anticipated.

■ For his part, the plaintiff has asked in his prayer for relief for permission to sell Bertha Robison's home. Under 11 U.S.C. § 363(f) [6] the trustee may sell property subject to the interest of another entity free and clear of that interest if, *inter alia*, applicable nonbankruptcy law permits such a sale, the other entity consents, the other interest is in bona fide dispute, or if the other entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of that interest. Clearly, Bertha Robison has not consented to a sale, indeed her attorney vigorously contests the trustee's request. As to any bona fide dispute as to the ownership of the house, this opinion should end that. The remaining grounds are whether a sale would be permitted under applicable nonbankruptcy law, or if the other owner could be compelled to accept a money satisfaction. The sale of real estate out from under a life tenant would not be permitted at common law, nor could the life tenant be

compelled to accept a money satisfaction. Schnebly, *Power of Life Tenant or Remainderman to Extinguish Other Interests by Judicial Process*, 42 Harv.L.Rev. 30, 46, 71 (1928). However, there is a statute in Michigan, M.S.A. § 27A.2930 [M.C.L.A. § 600.2930], which might be read as permitting such a sale. The defendant argued that the statute permitted such a sale only at the suit of the life tenant, and the plaintiff appeared to concede the point at trial. Further, even if § 27A.2930 [M.C.L.A. § 600.2930] is applicable it permits a sale only when it would be in the interests of all parties concerned, and the plaintiff introduced no evidence to establish that, nor did he argue the point. Lastly, the plaintiff objected to the defendant's introduction of any testimony as to the value and condition of the property, which testimony would be a necessary first step in determining what amount of money would satisfy the defendant's interest. Therefore, the Court can see no way but to deny the trustee's petition to sell the entire property. As to the estate's interest as remainderman, there is no doubt but that it may be sold. M.S.A. § 26.35 [M.C.L.A. § 554.-35]; *Defreese v. Lake*, 109 Mich. 415, 430, 67 N.W. 505 (1896). If the trustee can find someone interested in purchasing the remainder only, he may do so, provided that the sale, its preparation, arrangement or advertisement in no way interfere with Mrs. Robison's life estate.

CONCLUSION

The deed to Peter and Jack Van Houten is valid. Under the deed Bertha Robison holds a life estate and the bankruptcy estate of Jack Van Houten holds the remainder. Permission to rescind the transfer is denied, as is permission to sell the property except for the remainder interest.

6. Section 363(h) might arguably also apply. However, as neither party addressed the issue, and as it is far from certain that § 363(h) would

apply to a remainderman, the opinion does not consider this question.